# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ABOLAJI F. OLAWALE (R-59479), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 13 C 8535 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| MARC HODGE, Warden, | ) | |
| Lawrence Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is pro se petitioner Abolaji F. Olawale's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies the petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

Olawale challenges his 2006 Cook County, Illinois convictions for criminal sexual assault of two girls, ages fifteen and seventeen, during a sleepover at his home.

### A.    Procedural Background

Before turning to the merits of the habeas corpus petition, the Court notes that Olawale is no longer in respondent's custody. Olawale filed the petition while serving his prison sentence on the instant convictions in the Illinois Department of Corrections. However, according to Olawale's filing in a separate case, *Olawale v. Madigan*, No. 15-3758 (7th Cir.) (Docket #1 at 1), he completed his sentence and was released from custody on March 25, 2015, and is presently in the custody of the United States Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), at the Tri-County Detention Center in Ullin, Illinois, where he

faces removal. Olawale is no longer listed as an inmate on the Illinois Department of Corrections (IDOC) inmate locator website.

The Court has subject matter jurisdiction to adjudicate the present habeas corpus petition because Olawale filed the petition while he was in respondent's custody for the instant convictions. *See Stanbridge v. Scott*, 791 F.3d 715, 718 (7th Cir. 2015) (citing *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989)). Because Olawale faces collateral consequences from his conviction, namely, deportation, Olawale's release from respondent's custody during the pendency of this litigation does not moot this case. *See Eichwedel v. Curry*, 700 F.3d 275, 278 (7th Cir. 2012) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). There is a presumption that a convict faces collateral consequences from his conviction, *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004), and Olawale alleges the collateral consequence of facing removal proceedings, *see Spencer*, 523 U.S. at 9 (citing *Fiswick v. United States*, 329 U.S. 221-23 (1946)) (conviction resulting in deportation satisfies the collateral consequence standard). Thus, this action has not been rendered moot due to the completion of Olawale's criminal sentence and release to ICE. The Court will decide the petition on the merits.

**B.      Factual Background**

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Rhodes v. Dittmann*, 783 F.3d 669, 674 (7th Cir. 2015). Olawale has not provided clear and convincing evidence to rebut this presumption, so the following factual background is drawn from the Illinois Appellate Court's findings in their decisions on direct appeal, *People v. Olawale*, No. 1-07-0781 (1st Dist. Nov. 21, 2008) (Dkt. No. 10-1), and postconviction review,

*People v. Olawale*, 2012 IL App (1st) 102849-U (Ill. App. Ct. July 31, 2012) (Dkt. No. 10-5). These decisions are the relevant decisions for this Court's review because they are last decisions to adjudicate Olawale's claims on the merits. *See Greene v. Fisher*, --- U.S. ----, 132 S. Ct. 38, 45 (2011); *Eichwedel*, 696 F.3d at 671. Furthermore, the Court has reviewed the record in full and confirmed that the state-court findings are supported by the record.

Olawale was convicted of the criminal sexual assault of 15-year-old Melissa B. and 17-year-old Marjorie B. (Dkt. No. 10-1 at 1.) Marjorie lived with her cousin and legal guardian, Tracie B. (*Id.* at 2.) Olawale was married to Tracie. (*Id.*) Tracie and Marjorie had a mother-daughter relationship, and Marjorie treated Olawale as her stepfather. (*Id.*) Tracie's two children and her friend Denise Westmoreland also lived in the family home with Olawale, Tracie, and Marjorie. (*Id.*)

On May 30, 2004, Marjorie hosted a sleepover at her home. (*Id.* at 1-2.) Joining Marjorie for the sleepover were Melissa; Melissa's 14-year-old cousin, Jasmen T.; and a 16-year-old friend, Rashaan R. (*Id.*) Olawale drove the four girls to a video store to rent movies for the sleepover. (Dkt. No. 10-5 at 2.) He also purchased alcohol—Long Island iced tea—at the girls' request. (*Id.*) Olawale originally refused the request, but subsequently agreed. (Dkt. No. 10-1 at 2.)

All four girls testified at trial. Marjorie testified that, during the drive to the video store, Olawale said that it was beautiful for girls to have sex. (*Id.*) Marjorie also testified that Melissa had announced in the car that she had "'eaten'" Marjorie's "'pussy,'" but it was not true, and Marjorie had told Melissa to stop it. (*Id.*) However, Melissa and Jasmen testified that they could not recall Melissa making the comment in the car. (*Id.*)

Upon returning to the home, the girls changed clothes, ate pizza, and watched movies in the basement. (*Id*.) Olawale and Tracie were initially downstairs with the girls. (*Id*. at 2-3.) Tracie then fell asleep. (*Id*. at 3.) Olawale woke Tracie up and walked her to a bedroom on the second floor. (*Id*.)

Olawale then returned to the basement with the Long Island iced tea for the girls. (*Id*.) The girls, as well as Olawale, drank the alcohol. (*Id*.) Marjorie, Melissa, and Jasmen testified that this was their first time drinking alcohol. (*Id*.) The group finished the bottle, and the girls then suggested that they try apple vodka. (*Id*.) Olawale went to the liquor store to purchase the vodka. (*Id*.) He returned to the basement, and the girls drank the vodka, with Marjorie and Melissa drinking the most. (*Id*.)

At this point, Melissa, Marjorie, and Jasmen were drunk. Melissa and Marjorie, who were both wearing clothes, including pants, began pillow fighting and "acting crazy." Olawale sat in the basement corner smoking a cigarette and watching Melissa and Marjorie. Jasmen was on the couch and covered her entire body and face with a blanket. (*Id*.) Rashaan, who was the most sober of the group, became scared and went to Marjorie's room on the second floor. (*Id*.) Marjorie then hit her head on the entertainment system before passing out on a futon in the basement. (*Id*.) Melissa passed out on the basement floor. (*Id*.)

Melissa testified that she next remembered that her pants had been pulled down and Olawale was on top of her. (*Id*. at 3-4.) She also testified that Olawale put his penis in her vagina and had sexual intercourse with her. (*Id*. at 4.)

Marjorie was also no longer wearing pants. (*Id*.) Olawale put Melissa on top of Marjorie and told Melissa to "'hump'" Marjorie while he stood next to the girls. (*Id*.) This caused Marjorie to wake up. (*Id*.) Marjorie could feel her vagina touching Melissa's. (*Id*.) Olawale

4

then again placed Melissa on top of him and continued to have vaginal intercourse with her. (*Id*.)

Olawale then engaged in oral sex with Melissa, placing his penis in Melissa's mouth, and his mouth to her vagina. (*Id*.) Jasmen attempted to pull Melissa off Olawale, but he pushed Jasmin away. (*Id*.) Melissa explained that she could not feel anything during the incident because she was numb. (*Id*.) She originally testified that she consented to the sex, but later testified that she did not agree to what had happened. (*Id*.)

Marjorie testified that she passed in and out of consciousness during the incident. (*Id.*) She remembered waking up to Melissa being on top of her. (*Id*.) She also witnessed Olawale having intercourse with Melissa. (*Id*.) She further testified that Olawale was on top of her at one point during the incident, and she felt his penis penetrating her. (*Id*.) Marjorie testified that Olawale did not use a condom, but he wiped himself and Marjorie off when he heard someone coming downstairs. (*Id*.)

Jasmen testified that she removed the blanket from her head during the incident and saw Melissa on top of Marjorie with their private parts touching. (*Id*. at 5.) She also saw Olawale having sexual intercourse with both Melissa and Majorie. (*Id*.) Jasmen also testified that Olawale pushed her away when she tried to push him off Melissa. (*Id*.)

Jasmen then went upstairs to find Rashaan but could not find her. (*Id*.) Jasmen returned to the basement, where she found Melissa on the floor with her clothes on. (*Id*.) Melissa told Jasmen that Olawale raped her. (*Id*.)

Although there is some conflict in the testimony among Melissa, Jasmen, and Rashaan on the order of events, the girls agreed that Melissa and Jasmen eventually found Rashaan upstairs and told Rashaan what had happened. (*Id*. at 5-6.)

Melissa then called her boyfriend, DeAndre McDonald, and told him to come and get her. (*Id.*) She then vomited. (*Id.*) Jasmen took Melissa to the outside porch and went to check on Marjorie. (*Id.*) Jasmen was unable to wake Marjorie up. (*Id.*) Melissa walked away from the porch without her shoes. (*Id.*) Jasmen and Rashaan chased after Melissa. (*Id.*)

At this point, Tracie woke up to the slamming of the front door. (*Id.* at 6.) Olawale was standing by the doorway, and Jasmen, Melissa, and Rashaan were outside. (*Id.* at 6-7.) Tracie asked Olawale what was going on. (*Id.* at 7.) He responded that Melissa was sick from the pizza and had called her brother to get her. (*Id.*) Tracie said she would check on Melissa as she walked down the street, but Olawale told Tracie to let him check on Melissa. (*Id.*) The girls walked away from Olawale as he approached them. (*Id.*) Olawale came back home and said that he did not know where the girls went. (*Id.*)

Tracie then dialed the last number on the phone, and McDonald's mother, Carolyn, answered. (*Id.*) Tracie learned that Melissa was at the McDonald home. (*Id.*) Tracie told Carolyn that she wanted to check on Melissa, and Carolyn assented. (*Id.*) Tracie then walked to the McDonald home, where she found Melissa curled up in the bedroom, drunk. (*Id.*) Melissa then told Tracie and Carolyn what had happened. (*Id.*) Melissa, who was menstruating at the time, had blood and vomit on herself. Carolyn helped Melissa clean herself up. (*Id.*)

When Tracie left the McDonald home to get Marjorie, she found Olawale waiting in a car outside. (*Id.*) Tracie confronted Olawale about Melissa's allegations, but he denied them. (*Id.*) Tracie then went home to get Marjorie, found that Marjorie had passed out drunk in the basement, woke her up, and took her to the McDonald home. (*Id.* at 7-8.) Marjorie had also vomited. (*Id.*) At the McDonald home, Marjorie told Tracie about what had happened with Olawale. (*Id.*)

Tracie then left the McDonald home a second time to take the girls to the emergency room.  (*Id.*)  Tracie again found Olawale waiting outside the McDonald home in his car; he offered to go with her or call the police if she thought it was necessary.  (*Id.*) Melissa then came outside and starting screaming at Olawale before going back in the house.  (*Id.* at 8-9.)  At Tracie's prompting, Olawale left.  (*Id.* at 9.)  Tracie saw Olawale change his clothes at least twice between the prior evening and that morning.  (*Id.*)

Marjorie and Melissa were taken to the hospital.  (*Id.*)  Both girls provided their clothing and were examined by doctors who completed rape kits.  (*Id.* at 9, 12.)  The doctors did not find evidence of vaginal trauma.  (*Id.* at 12.)  Subsequent testing did not find semen on the girls' vaginal and oral swabs or on their clothing.  (*Id.* at 13.)  There were no hairs suitable for comparison recovered from the girls.  (*Id.*)  Melissa and Marjorie had blood alcohol levels of .082 and .09, respectively.  (*Id.* at 12.)  The girls were also interviewed by the police and recounted that Olawale had assaulted them.  (*Id.* at 11-12.)  Marjorie told the doctor that Olawale had pulled out of her during sex and ejaculated onto something.  (*Id.* at 12.)

Olawale called Tracie several times the next day.  (*Id.* at 10.)  Tracie told Olawale that he was being accused of rape.  (*Id.*)  She asked Olawale if he did anything.  (*Id.*)  He initially refused to answer, but eventually told her "yes and no" when she stated she needed to know.  (*Id.*)

Olawale was convicted following a bench trial.  (*Id.* at 13.)  The trial court, as finder of fact, found the girls credible and concluded that Olawale had provided them with alcohol and had assaulted Melissa and Marjorie as they described.  (Dkt. No. 10-4 at 123-24, 12/18/07 Tr. at 8-9.)  The court acknowledged that there was no medical evidence to support the girls' testimony, but noted that there was no testimony that anyone fought Olawale during the incident,

and he was seen withdrawing and wiping himself afterward. (*Id.* at 124, 12/18/07 Tr. at 9.) The trial court also found that the girls had been intoxicated. (*Id.* at 123, 12/18/07 Tr. at 8.) The court found that their stories were supported by the fact that they had made immediate reports of the assaults. (*Id.* at 124-25, 12/18/07 Tr. at 9-10.) Finally, the trial court found that Tracie's testimony regarding the girls' outcry was "extremely credible." (*Id.*)

After Olawale was convicted of the criminal sexual assault of Melissa and Marjorie, he was sentenced to two consecutive four-year prison terms. (Dkt. No. 10-1 at 14.) Olawale's conviction was affirmed on direct appeal, and the Illinois courts rejected his postconviction petition.

## ANALYSIS

On November 25, 2013, Olawale filed the present pro se petition for a writ of habeas corpus. The Court has liberally construed Olawale's filings. *See Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). The petition raises the following claims: (1) there is insufficient evidence to support the convictions; (2) the prosecutor briefed all witnesses together prior to trial, resulting in witness contamination; (3) trial counsel rendered ineffective assistance by failing to raise the witness-contamination issue at trial; and (4) trial counsel rendered ineffective assistance by advising petitioner not to testify at trial.

### A. Legal Standards

A writ of habeas corpus cannot issue unless a petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Because the state courts adjudicated Olawale's claims on the merits, the Court's review of the present habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court cannot grant habeas relief unless the state court's

decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision was based on an unreasonable determination of facts. 28 U.S.C. § 2254(d); *Premo v. Moore*, 562 U.S. 115, 128 (2011) ("A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'") (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must show that although the state court identified the correct legal rule, it unreasonably applied that rule to the facts of the petitioner's case. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Clearly established federal law for purposes of § 2254(d)(1) includes only "holdings, as opposed to the dicta," of the Supreme Court's decisions. *White v. Woodall*, --- U.S. ----, 134 S. Ct. 1697, 1702 (2014). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citations omitted). This presumption is especially strong when the state court is considering well-established legal principles that have been routinely applied in criminal cases for many years. *Burt v. Titlow*, --- U.S. ----, 134 S. Ct. 10, 15 (2013).

The Court's analysis is "backward looking," that is, the Court is limited to reviewing the record before the state court at the time that court made its decision. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). The Court must also measure the state-court decision against the

Supreme Court's precedents as of the time the state court rendered its decision. *Greene v. Fisher*, --- U.S. ----, 132 S. Ct. 38, 44 (2011).

The AEDPA's standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "'highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181 (quoting *Woodford*, 537 U.S. at 24). "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "Under § 2254(d), a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id.* at 102.

**B.     Petitioner's Claims**

**1.     Claim One:  Sufficiency of the Evidence**

Olawale argues that there is insufficient evidence to support his conviction. He notes that there was no physical evidence recovered from the girls and argues that the lack of physical evidence demonstrates the girls fabricated their allegations against him. He claims that there would have been physical evidence such as physical trauma, bodily fluids, or pubic hair

recovered if he had had sex with the girls as they claimed. Olawale also contends that the differences in the girls' stories about the incident further demonstrate that they lied about the events of that night.

A defendant's Fifth and Fourteenth Amendment due process rights are satisfied if, when viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Moreover, a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas review unless the decision was objectively unreasonable. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). To be objectively unreasonable, the decision must be "well outside the boundaries of permissible differences of opinion." *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015).

Here, the state appellate court relied on *People v. Wheeler*, 871 N.E.2d 728, 740 (Ill. 2007), which cites *Jackson* and follows its reasoning. (Dkt. No. 10-1 at 15.) Thus, the court identified and properly stated the relevant legal standards for the challenge to the sufficiency of the evidence. As for the court's application of that law, the court discussed Olawale's sufficiency of the evidence claim as follows, in part:

> The offense of criminal sexual assault requires that a defendant commit an act of sexual penetration. 720 ILCS 5/12-13(a) (West 2004). Sexual penetration includes any contact between the sex organ of one person and the sex organ of another person and does not require proof of the emission of semen. 720 ILCS 5/12-12(f) (West 2004). There is no requirement that testimony be corroborated by physical evidence. *People v. Hermosillo*, 256 Il. App. 3d 1020, 1030 (1993).
> Here, the evidence was sufficient to sustain defendant's conviction. Jasmen and Melissa both testified that defendant put his penis in Meliss[]a's vagina. Marjorie testified that defendant was on top of her and she felt his penis

penetrating her. Their testimony was corroborated by Melissa and Marjorie's prompt complaint. See *People v. Washington*, 240 Ill. App. 3d 688, 705 (1992). Shortly after the incident, Melissa told Marjorie, Jasmen, Rashaan, Carolyn and Tracie that defendant had sex with her. In the presence of Carolyn and the other girls, Marjorie also told Tracie what happened. In addition, Melissa told the [A]ssistant State's Attorney and detectives that defendant had sex with Marjorie, who also told the detectives [and a doctor] that defendant had sex with her.

(*Id.* at 15-16.)[1]

The appellate court explained further that although there was evidence that all four girls had consumed alcohol, the trial court was in the best position to determine how the alcohol had affected them, and the trial court could have reasonably concluded that their level of intoxication had not significantly affected their ability to observe or remember the pertinent events. (*Id.* at 16.) The appellate court rejected Olawale's assertion that the lack of physical evidence rendered the girls' testimony incredible, noting that no one had testified that they had struggled with Olawale, and neither Melissa nor Marjorie had testified that Olawale ejaculated inside them (*id.* at 16-17); rejected Olawale's reliance on the "minor" discrepancies among the girls' accounts of the events, and specifically noted that Jasmen's statements to Rashaan and any omissions from Jasmen's testimony did not materially contradict Melissa and Marjorie's versions of the events (*id.* at 17-18); and found that the trial court could have reasonably determined that the girls did not fabricate their accusations out of fear of getting in trouble for drinking, particularly in light of Marjorie's testimony that she was not afraid of being punished (*id.* at 18).

Based on the trial evidence, and viewing the evidence in a light most favorable to the prosecution, the state appellate court concluded that there was sufficient evidence that Olawale had sexually penetrated Melissa and Marjorie. The court's discussion of the evidence was

_____

[1]At the time of the convictions, criminal sexual assault was codified at 720 ILCS 5/12-13 of the Illinois Criminal Code. It is now located at 720 ILCS 5/11-1.20.

thorough. Its decision was not "well outside the boundaries of permissible differences of opinion," *see Corcoran*, 783 F.3d at 683, and therefore was a reasonable application of Supreme Court law.

Olawale asserts in his petition that the girls' testimony was not credible, but the trier of fact[2] was presented with this argument; it was the central theme of the defense. The court decided to believe the girls' testimony that Olawale had sexually assaulted Melissa and Marjorie. The court was aware that there was no physical evidence of the assault, and heard the various conflicts in the girls' testimony, but nevertheless found Olawale guilty. This Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not" by this court. *See Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Olawale is not entitled to the relief he seeks based on his first habeas claim.

## 2. Claims Two and Three: Briefing Witnesses Together and Ineffective Assistance of Counsel for Failing to Raise the Briefing Issue

Olawale argues that the prosecution violated his due process rights by speaking to all witnesses together before they testified (Claim Two). He also argues that his defense attorney was ineffective because he failed to properly preserve the issue for appeal (Claim Three). Respondent contends, correctly, that these claims are procedurally defaulted and thus federal habeas review is foreclosed.

Claim Two is procedurally defaulted because the Illinois Appellate Court resolved that claim on an adequate and independent state law ground of decision. "As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) a state court has declined to

---

[2]Cook County Judge Evelyn B. Clay presided over Olawale's case.

address those claims because the prisoner has failed to a meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Maples v. Thomas*, --- U.S. ----, 132 S. Ct. 912, 922 (2012) (brackets omitted) (quoting *Walker v. Martin*, 562 U.S 307, 316 (2011) and *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). "An independent state ground will be found when the court actually relied on the procedural bar as an independent basis for its disposition of the case."• *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (internal quotation marks omitted). To be an "adequate" procedural ground, a state rule must be "'firmly established and regularly followed.'" *Walker*, 562 U.S. at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)).

Olawale presented this claim to the state appellate court on direct appeal and conceded that he had not preserved the issue by raising it at trial or in his post-trial motion (Dkt. No. 10-1 at 39), but urged review under the plain-error doctrine. The appellate court held that Olawale waived his reliance on plain-error review by failing to cite legal authority in support of his assertion of error or developing an argument regarding why any error was plain error, as required by Illinois Supreme Court Rule 341. (Dkt. No. 10-1 at 17-18.) Because the state court relied on an adequate procedural bar in rejecting Olawale's claim regarding the witnesses' meeting with the prosecutor, Claim Two is procedurally defaulted. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) ("[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules . . . , that decision rests on independent and adequate state procedural grounds."); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (waiver establishes an adequate and independent state court ground); *Brown v. Chandler*, No. 05 C 2609, 2013 WL 6198182, at *7 (N.D. Ill. Nov. 27, 2013) (claim was procedurally defaulted where state court had rejected it for failing to follow

Illinois Supreme Court Rule 341); *Lieberman v. Kirby*, No. 10 C 2570, 2011 WL 6131176, at *22 (N.D. Ill. Dec. 8, 2011) (same).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and prejudice from the asserted error or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 749-50. Olawale cannot excuse his procedural default under either avenue. Respondent raised the procedural-default argument in his response to Olawale's petition, and Olawale filed a reply in which he failed to raise either a cause and prejudice or a miscarriage of justice argument. Thus, he has waived them. *See Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001). For the sake of completeness, however, the Court will explain why Olawale could not overcome his default even in the absence of waiver.

"Cause" is defined as "'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. Prejudice means an error which so infected the entire trial that the resulting conviction violates due process.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)). Three types of objective factors that would constitute sufficient cause include (1) interference by officials that made compliance impractical; (2) a factual or legal basis for a claim that was not reasonably available to counsel; and (3) constitutionally ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

The first two types of cause do not apply here. As for ineffective assistance, Olawale does raise a separate claim in his petition, Claim Three, that his trial counsel was ineffective for failing to raise at trial the issue of the prosecutor speaking to the witnesses together before trial.

15

But because this claim was not properly preserved in the state courts, it is also procedurally defaulted.  To constitute cause sufficient to satisfy a default of an underlying issue, the ineffective assistance of counsel claim itself must have been properly preserved at each level of state-court review.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).[3]

Olawale raised the ineffective assistance of counsel issue regarding the prosecutor's meeting with the witnesses on direct appeal and in his postconviction petition.  However, Olawale omitted the issue from his petition for leave to appeal (PLA) to the Supreme Court of Illinois.  (Dkt. No. 10-5 at 78-90.)  A claim must be presented to all levels of the Illinois courts, including in a PLA, to avoid procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Crockett v. Butler*, 807 F.3d 160, 166 (7th Cir. 2015).  Olawale's failure to raise the ineffective assistance of counsel argument in his postconviction PLA means that Claim Three is

---

[3] The fact that Olawale's ineffective assistance of counsel claim regarding the decision to testify (Claim Four) was properly exhausted does not save the procedural default on Claim Three. Although ineffective assistance of counsel is a single ground for relief, a petitioner must raise the particular factual basis for each aspect of the alleged ineffective assistance in order to preserve the respective argument. *Pole v. Randolph*, 570 F.3d 922, 934-35 (7th Cir. 2009). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default"; a petitioner "must have identified the specific acts or omissions of counsel that form the basis for" the claim of ineffective assistance. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (internal quotation marks and brackets omitted).  Furthermore, a petitioner cannot argue one theory of ineffective assistance to the state courts and another theory, based on different facts, to the federal court. *Id.*

defaulted, and because it is defaulted, it cannot be used to excuse the default of the underlying claim regarding the prosecutor speaking to the witnesses (Claim Two).[4]

This leaves Olawale with the "fundamental miscarriage of justice" (actual innocence) gateway to excuse his default. To show actual innocence, a petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, --- U.S. ----, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *Id.* (citing *House*, 547 U.S. at 538). A petitioner must present new, reliable evidence that was not presented at trial, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, to make a credible claim of actual innocence. *House*, 547 U.S. at 537; *see also McDowell v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed [a prisoner] out of the city, with credit card slips, photographs, and phone logs to back up the claim.'"). Olawale presents no new evidence to suggest he is actually innocent. His petition simply refers to the trial court evidence and reargues that there is no physical evidence and the

---

[4]Furthermore, the principles set forth in *Trevino v. Thaler*, --- U.S. ----, 133 S. Ct. 1911 (2013) and *Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309 (2012), which are "recent Supreme Court decisions that expand the circumstances under which procedural default may be excused," *Nash v. Hepp*, 740 F.3d 1075, 1076 (7th Cir. 2014), do not apply here because under Illinois law, which differs from the applicable state laws in *Trevino* and *Martinez*, collateral proceedings are not the first opportunity to raise an ineffective assistance of counsel claim. *See Toliver v. Pfister*, No. 13 C 8679, 2014 WL 4245788, at *5 (N.D. Ill. Aug. 27, 2014); *Chatman v. Magana*, No. 14 C 1650, 2014 WL 3866016, at *5 (N.D. Ill. Aug. 6, 2014).

girls' testimony should not be believed. This is insufficient to demonstrate actual innocence. Claims Two and Three are denied.[5]

### 3. Claim Four: Ineffective Assistance of Counsel Regarding Testifying

Here, as he did before the Illinois Appellate Court, Olawale asserts that his trial counsel was ineffective for "refus[ing] to allow" Olawale to testify at trial. (Dkt. No. 1 at 22.) Olawale states that he wanted to testify, but his attorney refused to let him do so because the attorney believed there was sufficient reasonable doubt for an acquittal due to the lack of physical evidence and inconsistencies in witness statements. (*Id.*)

An ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Olawale must demonstrate both deficient performance and prejudice. *See Premo*, 562 U.S. at 121. The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In its order affirming the circuit court's dismissal of Olawale's postconviction petition, the Illinois Appellate Court considered this claim and the evidence Olawale presented on it, which was nonexistent. (Dkt. No. 10-5 at 4 ("Nowhere does petitioner allege or is there any

---

[5] Even if Claims Two and Three were not defaulted, they are without merit. As to Claim Two, there is no constitutional right that requires the separation of witnesses prior to their testimony. *See Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988); *Drake v. Clark*, 14 F.3d 351, 358 (7th Cir. 1994). It may be good practice to keep witnesses separate to reduce the possibility that they influence each other's testimony, but there is no constitutional violation when they are not separated. *See Duckworth*, 861 F.2d at 170. Consequently, as to Claim Three, defense counsel was not obligated to raise the argument because it was meritless. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

evidence that trial counsel refused to let petitioner testify upon a contemporaneous assertion by petitioner of that right.").)  The appellate court properly cited *Strickland* as the controlling standard, and utilized its two-prong test, ultimately concluding that Olawale failed to satisfy either prong.  (*Id.* at 5-7.)  The appellate court properly recognized that a defendant's right to testify is a fundamental constitutional right, as is the choice of whether to testify, and that the decision ultimately rests with the defendant alone.  (*Id.* at 6.)  *See Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987); *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

The state appellate court's rejection of Olawale's claim was not an unreasonable application of controlling law.  First, Olawale had failed to present any evidence to support his argument that trial counsel had refused to let him testify.  Moreover, as the appellate court explained (Dkt. No. 10-5 at 6), his claim was contradicted by the trial record.  During the trial, defense counsel stated that Olawale did not wish to testify.  (Dkt. No. 10-4 at 60.)  The court then engaged Olawale in a colloquy, explaining to Olawale that he had a right to testify and it was his choice whether to testify.  (*Id.* at 60-61.)  The Court also specifically told Olawale that it was his choice alone, and not his attorney's, and asked Olawale if he understood.  (*Id*. at 61.)  Olawale affirmed repeatedly that it was his choice not to testify, not his attorney's, and that he understood.  (*Id.*)  The record supports the state court's determination that Olawale made the ultimate decision not to testify.

Furthermore, there is nothing to suggest that defense counsel provided Olawale erroneous advice that was so egregious as to require habeas relief.  Under the *Strickland* and AEDPA standard, the Court must afford a strong presumption of competency to questions of trial strategy.  *Cone*, 535 U.S. at 698-99.  Olawale attributes his attorney's alleged advice not to testify to the lack of physical evidence and the "incredible" nature of the girls' testimony.  (Dkt.

No. 1 at 22.)  Under the circumstances, the Court is unable to find that counsel was ineffective by counseling Olawale, as a matter of strategy, not to testify.  Had Olawale testified, it is possible that the State could have extracted harmful testimony from him during its cross-examination that would have bolstered its case. Additional evidence beyond the girls' testimony included their immediate reports of the assaults, Tracie's testimony, and the fact that Olawale said "yes and no" when responding to Tracie's question about whether he did anything to the girls.  Even though Olawale did not take the stand, and the court found the girls credible and returned a guilty verdict, that unfavorable outcome does not mean that counsel's advice fell outside the bounds of reasonable representation or that the state court's rejection of Olawale's claim was objectively unreasonable under the deferential AEDPA standard

Finally, as the appellate court also properly noted, Olawale has not shown that he was prejudiced by counsel's advice not to testify.  There is nothing to suggest that the outcome of his trial would have been different had he testified.  The state court's finding that Olawale could not demonstrate prejudice under the *Strickland* standard is not objectively unreasonable.

Claim Four is denied.

## C.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011).  "The Supreme Court has observed that an applicant has made a 'substantial showing' where 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez*, 653 F.3d at 446 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (some internal quotation marks omitted).  Because Olawale has not made this showing, the Court declines to issue a certificate of appealability.

Olawale is advised that this is a final decision ending his case in this Court.  If he wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).  Olawale need not bring a motion to reconsider this Court's ruling in order to preserve his appellate rights.  However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.  *See* Fed. R. Civ. P. 59(e).  The time to file a motion pursuant to Rule 59(e) cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.  *See* Fed. R. App. P. 4(a)(4)(A)(iv).  Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  The time to file a Rule 60(b) motion cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

Petitioner's habeas corpus petition [1] is denied on the merits.  The Court declines to issue a certificate of appealability.  On the Court's own motion, respondent Marc Hodge is terminated, and Damon Acuff, Warden, Tri-County Detention Center, is substituted as

respondent.  The Clerk is directed to alter the case caption accordingly to *Olawale v. Acuff*.  The Clerk is instructed to enter a judgment in favor of respondent and against petitioner.  Civil case terminated.

**SO ORDERED.**                    **ENTERED:    January 22, 2016**

_____
**JORGE L. ALONSO**
**United States District Judge**